IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANITA GINSKI ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 14 C 5988 |
| ) | |
| CAROLYN W. COLVIN, Acting ) | Magistrate Judge Susan E. Cox |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Plaintiff Anita Ginski ("Plaintiff") appeals the Commissioner of Social Security's decision to deny her Social Security Disability benefits under Title II of the Social Security Act and Supplemental Security Income under Title XVI of the Social Security Act. We hereby grant Plaintiff's motion for summary judgment [dkt. 12] and deny the Commissioner's motion for summary judgment [dkt. 17]. The Administrative Law Judge's decision is reversed.

## STATEMENT

Plaintiff appeals the Commissioner of Social Security's decision to deny her Disability Insurance Benefits under Title II and Supplemental Security Income Benefits under Title XVI of the Social Security Act.[1] Plaintiff filed a motion for summary judgment seeking to reverse the decision of the Administrative Law Judge ("ALJ"). A motion for summary judgment has been filed on behalf of the defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"). For the reasons outlined below, we grant Plaintiff's motion [dkt. 13] and deny the Commissioner's motion [dkt. 17]. The ALJ's decision is reversed.

Plaintiff claims she has been disabled since April 1, 2009, due to depression, schizoaffective disorder, and back pain.[2] Plaintiff applied for Title II disability insurance benefits

---
[1] *See* 42 U.S.C. §§ 405(g), 416(i), 423(d) 1383(c).
[2] R. at 20,

1

and supplemental security income on June 15, 2011.[3] The Social Security Administration denied her application.[4] Plaintiff filed a request for reconsideration on November 7, 2011.[5] Plaintiff filed a request for a hearing before an ALJ on March 22, 2012.[6] A hearing was held on February 20, 2013, in front of ALJ Patrick Nagle.[7] The Social Security Administration denied Plaintiff's request for review of the ALJ's decision.[8]

### A.     Medical History

Plaintiff was first treated by Loyola University Medical Center in 1999 for depressive episodes.[9] Plaintiff was hospitalized in 1999 for psychotic symptoms.[10] Plaintiff asserted she has been taking an antipsychotic, Perphenazine, for approximately 13 years.[11] Plaintiff currently takes Perphenazine and a mood stabilizer, Divalproex, for her depressive disorder.[12] Plaintiff reports drowsiness from her medication.[13] Plaintiff sought regular treatment from February 2006 up until the time of the hearing at Loyola University Medical Center in the mental health clinic from various doctors, primarily Drs. Arvind Yekanath, M.D., and Vidushi Savant, M.D.[14] Dr. Yekanath treated Plaintiff for approximately one year.[15] In Plaintiff's formal mental status evaluation for the Bureau of Disability Determination Services dated September 22, 2011, Plaintiff reported auditory hallucinations to Dr. Harvey Friedson, Psy.D.[16] Also, state agency

---

[3] R. at 18.
[4] R. at 18.
[5] R. at 94.
[6] R. at 18.
[7] R. at 18.
[8] R. at 1.
[9] R. at 211.
[10] R. at 46, 302.
[11] R. at 51.
[12] R. at 210, 424, 434.
[13] R. at 57.
[14] R. at 444.
[15] R. at 424.
[16] R. at 445.

psychological consultant Donna Hudspeth, Psy.D., evaluated Plaintiff on October 3, 2011.[17] Plaintiff was noted to have difficulty concentrating, talking, and answering during this evaluation.[18] Dr. Hudspeth found Plaintiff's symptoms to have a mild limitation in performing activities of daily living, a mild limitation in maintain social functioning, and a moderate limitation in maintaining concentration, persistence, or pace.[19]

On October 24, 2011, Plaintiff reported to Dr. Savant that her depression was 10 out of 10 because "they rejected my social security."[20] On December 5, 2011, Plaintiff continued to be pre-occupied with her disability claim and told Dr. Savant she was too depressed to bathe, wash her hair, or brush her teeth.[21] Plaintiff reported in her December 7, 2011 disability report that she was "completely unable to function" and did not "shower or clean [her] house."[22]

Additionally, Plaintiff saw Dr. Jamie Birris, Psy.D., on January 4, 2012.[23] Dr. Birris found Plaintiff's symptoms to be present without triggers, but stress and encounters with other people increase the symptoms.[24] Dr. Birris noted Plaintiff was "unable to maintain attention and concentration sufficient enough to participate in a 45 minute therapy session."[25] Dr. Birris concluded therapy was not appropriate for Plaintiff due to Plaintiff's impaired functioning, inability to concentrate, and inability to maintain attention.[26]

Plaintiff also reports that she suffers from back pain. Plaintiff was first treated for back pain at Our Lady of the Resurrection in 1995.[27] Plaintiff went to Our Lady of the Resurrection

---

[17] R. at 452.
[18] R. at 464.
[19] R. at 462.
[20] R. at 545.
[21] R. at 544.
[22] R. at 253.
[23] R. at 490.
[24] R. at 490.
[25] R. at 491.
[26] R. at 491, 493.
[27] R. at 212.

Medical Center Emergency Department for back and knee pain on November 27, 2008.[28] Plaintiff denied acute injury as the cause of her back pain.[29]

On September 22 2011, Dr. Charles Carlton, M.D., examined Plaintiff for her Internal Medicine Consultative Examination for the Bureau of Disability Determination Services.[30] Dr. Carlton spent approximately 30 minutes with the Plaintiff for the exam.[31] Plaintiff told Dr. Carlton that she could walk two blocks before experiencing low back pain, pain in her legs, and pain in her feet.[32] Dr. Carlton noted decreased range of motion at the lumbar spine.[33] Dr. Carlton concluded Plaintiff could walk greater than 50 feet without an assistive device and could perform tasks that involved lifting 10 to 20 pounds.[34]

On October 12, 2011, state agency medical consultant Dr. Marion Panepinto, M.D., concluded Plaintiff's back pain was not a severe impairment and diagnosed Plaintiff with subtle levoscoliosis of the lumbar spine.[35] Dr. Panepinto's report contained minimal notes on how she reached her conclusion.[36]

State agency medical consultant Dr. Towfig Arjmand, M.D., also evaluated Plaintiff on March 13, 2012.[37] Dr. Arjmand agreed with Dr. Panepinto's levoscoliosis diagnosis and concluded Plaitniff was capable of unskilled work with limitations in dealing with the public.[38] Later, Plaintiff saw Dr. Kornelia Krol, M.D., at Krol Obstetrics and Gynecology, LLC, on May

---

[28] R. at 292.
[29] R. at 292.
[30] R. at 433.
[31] R. at 433.
[32] R. at 433.
[33] R. at 433.
[34] R. at 433.
[35] R. at 448.
[36] R. at 450.
[37] R. at 584.
[38] R. at 584.

10, 2012.[39] Dr. Krol diagnosed Plaintiff with osteoporosis and stated Plaintiff's fracture risk was high.[40]

### B. Employment History

Plaintiff worked as a receptionist from approximately November 1994 until April 2001.[41] From August 2001 until approximately 2011, Plaintiff worked as a substitute teacher.[42] In addition to substitute teaching, Plaintiff briefly held positions as a telemarketer and a merchandiser.[43] Plaintiff claims she was let go from these positions due to not producing and problems getting along with people because of her illness.[44]

### C. The ALJ's Decision

Following the hearing, the ALJ determined, *inter alia*, that: 1) Plaintiff had not engaged in substantial gainful activity since April 1, 2009;[45] 2) the ALJ determined that Plaintiff's severe impairments include depression and schizoaffective disorder, but determined Plaintiff's alleged back pain is not a severe impairment;[46] 3) Plaintiff's impairments do not meet, either individually or in combination, the severity requirements of the listing in 20 CFR Part 404, Subpart P, Appendix 1;[47] 4) Plaintiff has the Residual Functional Capacity ("RFC") necessary to perform a full range of work at all exertional levels, but the Plaintiff is limited to performing work consisting of simple, routine, and repetitive tasks in a low stress job with no interaction with the public;[48] 5) given the Plaintiff's determined RFC, the ALJ found the Plaintiff was

---

[39] R. at 597.
[40] R. at 597, 600.
[41] R. at 209.
[42] R. at 209.
[43] R. at 230.
[44] R. at 47, 48, 433.
[45] R. at 20
[46] R. at 20, 21
[47] R. at 21.
[48] R. at 23. The ALJ defines a low stress job as a job that has only occasional change in the work setting. *Id*.

5

unable of performing her past relevant work as a receptionist, substitute teacher, and merchandiser.[49]

Although the ALJ found Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, the ALJ did not find the Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms entirely credible.[50] ALJ found Plaintiff's alleged deterioration of her symptoms after her initial denial of benefits not to be credible.[51]

Additionally, the ALJ accorded little weight to the opinion of treating physicians, Drs. Yekanath and Savant.[52] Drs. Yekanath and Savant wrote a letter in support of Plaintiff's disability application on August 22, 2011.[53] Dr. Yekanath stated the Plaintiff stabilized because of her medications, but her "cognitive deficits (difficulty following instructions, memory impairment, disorganization)" make her unable to hold meaningful employment.[54] The ALJ opined Dr. Yekanath's statement was "at odds" with the treatment records.[55] Furthermore, the ALJ found the treating physicians' notes did not provide a function-by-function analysis of the Plaintiff's limitations and their opinion contradicted the opinion of state agency psychological consultant, Dr. Hudspeth.[56] Instead, the ALJ gave great weight to Dr. Hudspeth's opinion.[57] The ALJ found Dr. Hudspeth's opinion to be well-supported by treatment notes.[58] Furthermore, the ALJ accepted Dr. Hudspeth's opinion that the Plaintiff could adopt to ordinary work changes and could make ordinary work related decisions, but should not be required to deal with the public.[59]

---

[49] R. at 28.
[50] R. at 24.
[51] R. at 26.
[52] R. at 27.
[53] R. at 424.
[54] R. at 424.
[55] R. at 27.
[56] R. at 27.
[57] R. at 28.
[58] R. at 28.
[59] R. at 28.

6

The ALJ accorded slight weight to Dr. Birris' opinion and thought the Plaintiff's reason for seeing Dr. Birris was "suspect."[60]

## DISCUSSION

I. STANDARD OF REVIEW

The ALJ's decision must be upheld if it follows the administrative procedure for determining whether the plaintiff is disabled as set forth in the Act,[61] if it is supported by substantial evidence, and if it is free of legal error.[62] Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."[63] Although we review the ALJ's decision deferentially, she must nevertheless build a "logical bridge" between the evidence and her conclusion.[64] A "minimal[] articulat[ion] of her justification" is enough.[65]

II. THE ALJ FAILED TO GIVE APPROPRIATE WEIGHT TO TREATING PHYSICIAN'S OPINION

The ALJ found the treating physicians' opinions were at odds with their treatment notes and the other physicians' opinions. However, the ALJ did not provide any substantial evidence in the record to support this conclusion. Instead, the ALJ focused on treatment dates from March 14, 2011 and April 25, 2011, in addition to Dr. Yekanath's letter of support from August 22, 2011. The ALJ's reliance on these two treatment dates while disregarding the rest of the record is inappropriate.

The ALJ did not give the treating physicians' opinions controlling weight and failed to evaluate the opinions in accordance with 20 C.F.R. § 404.1527(c)(2). The ALJ is required to consider five factors in order to decide how much weight to give the opinion: (1) the length of

---

[60] R. at 28.
[61] 20 C.F.R. §§ 404.1520(a) and 416.920(a).
[62] 42 U.S.C. § 405(g).
[63] *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).
[64] *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014).
[65] *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008).

the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship"; (3) supportability; (4) consistency "with the record as a whole"; and (5) whether the treating physician was a specialist in the relevant area.[66] The ALJ found that Drs. Yekanath and Savant's opinions were "at odds" with their treatment notes and inconsistent with the evaluations of other physicians. However, the ALJ did not point to the treatment notes that he relied on to come to that conclusion. Additionally, the ALJ failed to consider the length of the treatment relationship, the extent of treatment, and the physician's specialty in the area.[67] Both doctors are psychiatrists, but the ALJ failed to consider their specialty. Instead, the ALJ almost exclusively focused on treatment notes from two dates while ignoring numerous other treatment dates from the same physicians. As a result, the ALJ chose to give more weight to Dr. Hudspeth's opinion even though Plaintiff only saw Dr. Hudspeth on one occasion. Furthermore, the ALJ did not support his conclusion that Dr. Hudspeth's opinion was well supported by the treatment notes with any evidence from the record.

While the ultimate issue of disability is a legal decision reserved for the Commissioner, the ALJ cannot disregard the medical evidence as a whole from the treating physician.[68] The ALJ must consider the entire record, including those portions of the record that do not support the ALJ's ultimate determination.[69] Particularly in mental illness cases, it is important for the ALJ to evaluate the entire record, as mental illness often fluctuates.[70] Plaintiff's condition has been relatively stable with treatment, but there can be a great difference between "a patient who responds to treatment and one who is able to enter the workforce."[71] Here, the record is inconsistent with the ALJ's finding that Plaintiff has the ability to work. Dr. Hudspeth found

---

[66] 20 C.F.R. §§ 404.1527(c)(2). *Scrogham v. Colvin,* 765 F.3d 685, 697 (7th Cir. 2014).
[67] 20 C.F.R. §§ 404.1527(c)(2).
[68] *Scrogham v. Colvin,* 765 F.3d 685, 697 (7th Cir. 2014).
[69] *Scrogham v. Colvin,* 765 F.3d 685, 697 (7th Cir. 2014).
[70] *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011).
[71] *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011).

Plaintiff's symptoms moderately interfere with Plaintiff's ability to maintain concentration, persistence, or pace. Dr. Birris noted Plaintiff could not maintain attention and concentration to participate in a 45-minute therapy session. Plaintiff testified she is unable to care for her own hygiene, cook, or do laundry. Yet, the ALJ found that Plaintiff is suitable for work as long as she does not deal with the public.[72] Even Dr. Hudspeth's opinion gives rise to doubt that Plaintiff is suitable to work due to her illness. The ALJ's decision to give only slight accordance to the opinions of Plaintiff's treating psychiatrists and to disregard parts of the record was erroneous.

### III. THE ALJ FAILED TO BUILD A LOGICAL BRIDGE BETWEEN THE RECORD AND THE EVALUATION OF PLAINTIFF'S BACK PAIN

The ALJ found Plaintiff's back pain was not a severe impairment and afforded great weight to the opinions of state consultants Drs. Panepinto and Arjmand. The ALJ discussed Dr. Carlton's 30-minute evaluation of Plaintiff in some detail, and concluded that Plaintiff's alleged back pain does not even minimally limit Plaintiff's ability to work.[73] However, the ALJ did not examine any other medical records regarding Plaintiff's alleged back pain, such as Dr. Krol's diagnosis of osteoporosis. Dr. Krol's diagnosis came after Drs. Panepinto and Arjmand evaluated Plaintiff. The ALJ reasoned that Plaintiff's back pain was not a medically determinable impairment, yet completely disregarded Plaintiff's diagnosis of osteoporosis. Additionally, the ALJ accorded significant weight to the opinions of Drs. Panepinto and Arjmand even though their treatment records contained hardly any notes. The ALJ's disregard of entire parts of the record was erroneous.[74]

## CONCLUSION

---

[72] R. at 29.
[73] R. at 21.
[74] *Scrogham v. Colvin,* 765 F.3d 685, 697 (7th Cir. 2014).

9

For the foregoing reasons, we remand this matter for further proceedings consistent with this opinion. Plaintiff's motion for summary judgment is granted [dkt. 13] and the Commissioner's motion for summary judgment is hereby denied [dkt. 17].

ENTER:

DATED: 1/21/2016

_____
U.S. Magistrate Judge, Susan E. Cox